### In re BUDGET UNIFORM CENTER, INC., Debtor.

### Bankruptcy No. 85–05311 T.

United States Bankruptcy Court, E.D. Pennsylvania.

March 24, 1987.

Peter C. Cilio, Alexander N. Rubin, Jr., Mary Ellen O'Laughlin, Robert Szwajkos, Rubin, Quinn & Moss, Philadelphia, Pa., for Budget Uniform Center, Inc.

Richard C. Osterhout, Feasterville, Pa., for Vigilante's ARCO Service.

### OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

In the matter at hand, the debtor's vehicles were impounded after this Court had entered an Order for Relief on an involuntary Chapter 11 petition. The debtor filed

---

**12.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

a motion for turnover of the vehicles and the respondent answered and counter-motioned. Before this Court is the counter-motion of the respondent for imposition of an equitable lien upon motor vehicles and payment of same from proceeds of sale. The respondent claims entitlement to immediate reimbursement from the proceeds of the sale of the debtor's vehicles for the costs it incurred in the storage and towing of the impounded vehicles. For the reasons hereinafter stated, we deny the respondent's counter-motion for the imposition of liens and for immediate reimbursement.

The facts of this case are not in dispute. On February 27, 1986, the Sheriff of Montgomery County seized two motor vehicles belonging to Budget Uniform Center, Inc. ("debtor") pursuant to a Writ of Execution filed by the Vigilante's ARCO Service ("respondent"). The respondent had no knowledge of the bankruptcy filing until after the seizure of the vehicles and, once notified, respondent informed the Sheriff that no further action should be taken pursuant to the Writ of Execution.[1]

The Sheriff had deposited the vehicles for storage at the premise of Jim Bowe's Towing ("Bowe's"). Shortly after seizure, the debtor requested Bowe's to release the vehicles but Bowe's refused to do so unless all storage charges were paid.[2] As a result of the refusal, the debtor filed a motion to compel turnover of vehicles.[3] Bowe's did not file an answer to debtor's motion. The respondent answered and filed the instant Counter-Motion for "Imposition of an Equitable Lien and Payment of Same from Proceeds of Sale of Vehicles" on the grounds that because of the debtor's failure to regain possession, it was required to pay storage charges to Bowe's totalling $1,000.00 for services rendered through April 18, 1986.

On July 17, 1986 a hearing was held on debtor's motion to compel turnover. Bowe's failed to appear. There was no dispute as to debtor's entitlement to the turnover. As a result, the Court entered an order which provided (1) that Bowe's release the vehicles to the debtor; (2) that the debtor was permitted to sell the vehicles; and (3) that the proceeds from the sale were to be placed in escrow pending further Court order. Also at this hearing, the Court heard testimony regarding the respondent's claim to entitlement to an equitable lien. This issue was taken under advisement.

In its counter-motion, the respondent claims it is entitled to subrogation for the amount paid for towing and storage on various theories. It claims it is entitled to a "common law garageman's lien and/or a salvor's lien" under 75 Pa.C.S.A. § 7306, and/or that it is entitled to costs and expenses necessary to preserve the property of the estate, in accordance with Section 542(c), Section 543(a), (b) and (c) and/or Section 503(b)(1)(A) of the Bankruptcy Code.

Although the respondent claims it is entitled to a lien under 75 Pa.C.S.A. § 7306, the automatic stay section of Section 362 of the Bankruptcy Code enjoins the imposition of just such action. Specifically, this section stays "... any act to create, perfect, or enforce any lien against the property of the estate." Therefore, 11 U.S.C § 362(a)(4) would specifically prevent the creation and enforcement of any lien against the property of the estate without first being granted relief from this Court.

Moreover, the respondent claims a garageman's lien or salvor's lien pursuant to 75 Pa.C.S.A. § 7306.[4] Section 7306 deals with *abandoned* vehicles. The debtor's vehicles were never abandoned. In fact, the

---

**1.** The Sheriff impounded the vehicles at approximately 11 A.M. on 2–24–86. The respondent was notified of the bankruptcy at 3:40 P.M. of the same day.

**2.** $55.00 per vehicle for towing services and $10.00 per day per vehicle for storage.

**3.** Filed with this Court, April 4, 1986.

**4.** 75 Pa.C.S.A. § 7306 provides, "In the event the owner or lienholder of an abandoned vehicle reclaims the vehicle, the reclaiming party shall pay the costs for towing and storage, plus a fee of $25 of which $10 shall be transmitted to the department by the salvor."

debtor demanded release of the vehicle on February 27, 1986 and filed a motion for turnover on April 4, 1986 after a release was refused. Therefore, we hold that the respondent's claim under 75 Pa.C.S.A. § 7306 is without merit.

■ Next, the respondent argues that it is entitled to costs and expenses necessary to preserve the property of the estate. Section 503(b)(1)(A) specifies the kinds of administrative expenses that are *allowable* in a case under the Bankruptcy Code. Specifically, Section 503(b)(1)(A) allows, "... the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case." Although the respondent may have an administrative claim against the debtor's estate,[5] it is not now entitled to immediate payment. As with any administrative claim, the respondent must wait for confirmation of a plan before becoming entitled to payment. We therefore find that the respondent's claim for distribution under 503(b)(1)(A) is premature and not supported by the Code.

■ Additionally, the respondent argues that Section 543(a), (b) and (c) of the Code supports its claim to reimbursement from the proceeds of the sale. 11 U.S.C. § 543(b)(2) provides for the "payment of reasonable compensation for services rendered and costs and expenses incurred by [a] *custodian.*" (emphasis added). Section 101(10) of the Code defines a custodian as:

... (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

(B) assignee under a general assignment for the benefit of the debtor's creditors; or

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors;

A custodian within the meaning of 11 U.S.C. § 101(10) functions for all of the creditors and is charged with protecting the interests of the entire creditor body. See *In re Meyers, Inc.*, 15 B.R. 390, 8 BCD 418 (Bkrtcy S.D.CA 1981) where the Court said:

a creditor acting for his own benefit, is not within the ambit of the intent of Congress in defining a custodian. Congress intended that definition to apply to a third party acting not for the benefit of the creditor, but rather for the benefit of all creditors.

*In re Meyers*, 15 B.R. 390, 8 BCD at 419. It is therefore clear that Section 543 applies only to a *custodian* of property of the estate. Since the respondent does not qualify as a custodian, as defined by the Code, costs can not be recovered under Section 543.

We conclude that, in light of the existence of the automatic stay, the respondent is not entitled to the imposition of a lien on the debtor's vehicles. We also find that the respondent's claim for immediate reimbursement for costs of towing and storing the debtor's vehicles under Sections 542(c), 543(a), (b) and (c) and/or Section 503(b)(1)(A) of the Bankruptcy Code are without merit. We therefore deny the respondent's Counter-Motion for Equitable Lien and Payment of Same from Proceeds of Sale.

---

**5.** We are not now making a judgment as to the merit of any administrative claim the respon-

dent may make in the future.